NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0334n.06

No. 24-2035

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

OPV PARTNERS, LLC, a Michigan limited liability company,

      Plaintiff-Appellant,

v.

CITY OF LANSING, MICHIGAN, a Michigan Municipality; RAWLEY VAN FOSSEN, Economic Development and Planning Director for the City of Lansing, Michigan and NICHOLAS MONTRY, Deputy Economic Development and Planning Director for the City of Lansing, Michigan, in their individual and official capacities,

      Defendants-Appellees.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**FILED**
Jul 09, 2025
KELLY L. STEPHENS, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN

OPINION

Before: MOORE, GRIFFIN, and KETHLEDGE, Circuit Judges.

KETHLEDGE, Circuit Judge. City officials in Lansing, Michigan, denied OPV Partners, LLC, a certificate of compliance to continue to rent out units in an apartment complex that OPV had owned for nearly a decade. OPV sued Lansing and two city officials, alleging violations of the Fourteenth Amendment's due-process clause and the Fifth Amendment's takings clause (as incorporated by the Fourteenth), along with a state-law claim for breach of a settlement agreement from prior litigation. The district court granted the defendants' motion to dismiss. We affirm, albeit on different grounds.

I.

From 2014 to 2024, OPV owned an apartment complex called Autumn Ridge Apartments and Townhomes in Lansing, Michigan. Throughout that period, OPV rented out units in the

complex for residential use. Lansing's ordinances require that, to lease residential units, rental properties must obtain a certificate of compliance from Lansing's Office of Code Compliance. *See* Lansing, Michigan Code of Ordinances § 1460.49(a). The certificate must be renewed every two years. *See id.* § 1460.45(c). Lansing will issue a certificate of compliance only after the Office of Code Compliance inspects the property to ensure that none of the units contain health or safety hazards or other violations of Lansing's property-maintenance code. *Id.* § 1460.49(a).

All 618 units in Autumn Ridge were certified in compliance with Lansing's housing code until 2019, when an inspection revealed several code violations. In January 2020, Lansing placed pink and red tags on certain units in Autumn Ridge. A pink tag prohibits a property owner from renting a unit to a new tenant until Lansing issues a certificate of compliance; a red tag means that a unit is vacated, unsafe, and condemned.

In March 2020, OPV sued Lansing in state court, alleging that Lansing had violated city ordinances by applying the tags and by denying OPV a certificate of compliance. The parties settled that litigation in November 2022, in an agreement that required Lansing to remove the pink tags, reinspect the property, and allow OPV to correct any violations by an agreed-upon date. The settlement agreement gave OPV the right to appeal any cited violation pursuant to procedures provided in the Lansing Housing Code, and Lansing agreed that "Certificates of Compliance shall be issued in good faith in accordance with the Lansing Housing Code and current practice. Certificates shall not be unreasonably withheld."

From October 2022 to January 2023, Lansing again conducted certification inspections at Autumn Ridge. Afterward, Lansing sent notices to OPV identifying code violations that Lansing said OPV must address before Lansing would issue certificates of compliance. In January 2023, OPV submitted appeals of those notices to Lansing's Building Board of Appeals. OPV argued in

those appeals that the amount of time Lansing gave it to address the code violations was unreasonable and violated the settlement agreement.

In February 2023, a Lansing official sent OPV's counsel an email that listed the required materials—certain forms and information, along with a fee of $200 per appeal—that OPV would need to provide before Lansing would hear its appeals. In March 2023, the same official emailed OPV's counsel that, "[i]n order to be on the agenda for the Building Board of Appeals meeting on April 11th, we must receive the appeals form on or before March 22nd." OPV did not submit the forms or pay the fees, and the Board did not hear the appeals at the April meeting.

In May 2023, Lansing again issued notices to OPV for violations at the Autumn Ridge property. In July 2023, OPV's counsel emailed a Lansing city attorney to ask why Lansing had issued these notices after OPV had appealed the inspections. The city attorney replied that Lansing thought OPV had abandoned its appeals because OPV had never paid the required fees.

In August 2023, OPV again sought to appeal the notices of violations. A Lansing official again emailed OPV's counsel that Lansing had received the appeals, but that—to be "scheduled for the September 12th meeting" of the Building Board of Appeals—"payment will need to be made today or tomorrow before 4:30 pm which is 20 days before the meeting. Or payment needs to be paid by September 20th to be placed on the October 10th meeting." But OPV again made no payments, and the Board never heard the appeals.

In September 2023, OPV met with Nicholas Montry, Lansing's Deputy Director of Economic Development and Planning, to discuss OPV's intention to sell Autumn Ridge. In that meeting, Lansing agreed to hold OPV's appeals in abeyance and to take no further action so that the property could be sold.

In January 2024—allegedly at the direction of Montry and Rawley Van Fossen, Lansing's Director of Economic Development and Planning—Lansing representatives placed pink tags on each unit at Autumn Ridge and threatened to condemn each unit a month later. The representatives also knocked on unit doors and advised tenants to withhold rent or move out, and otherwise placed red tags on units they believed to be vacant. OPV asked Lansing to remove the tags, but Lansing refused.

OPV later brought this suit under 42 U.S.C. § 1983, alleging that Lansing, Montry, and Van Fossen violated OPV's due-process rights under the Fourteenth Amendment and took OPV's property by placing pink and red tags on units, directing tenants to withhold rent, and refusing to certify units "while valid appeals were pending." OPV also brought a state-law claim for breach of the settlement agreement.

Meanwhile, OPV appealed the notices again, and the Board of Appeals offered to schedule a hearing on April 9 or May 14, 2024—provided that OPV paid a fee of $200 per appeal, at least 20 days before either hearing date. But OPV again did not pay the fees, and the Board did not hear the appeals. OPV sold Autumn Ridge in May 2024.

Lansing later moved to dismiss this suit under Civil Rule 12(b)(1) for lack of subject-matter jurisdiction, and under Rule 12(b)(6) for failure to state a claim. The district court granted that motion because, it said, OPV had failed to allege a property interest that could sustain its due-process claim, and had failed to allege a taking because Lansing has authority to enforce its housing code. The court also held that Montry and Van Fossen were entitled to qualified immunity because OPV had failed to demonstrate any constitutional violation. The court declined to exercise supplemental jurisdiction over OPV's state-law claim. This appeal followed.

II.

We review de novo the district court's grant of a motion to dismiss for failure to state a claim. *Janosek v. City of Cleveland*, 718 F.3d 578, 581 (6th Cir. 2013). We may consider exhibits attached to the complaint and exhibits attached to the motion to dismiss, if the complaint refers to them and they are central to its claims. *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016).

OPV argues it stated a claim that Lansing violated its right to procedural due process under the Fourteenth Amendment. To state such a claim, a plaintiff must plausibly allege that the defendant deprived it of a protected property interest without first affording it "adequate procedural rights." *Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999). We assume without deciding that OPV had a protected property interest in continuing to rent out units for residential use at Autumn Ridge, and ask only whether Lansing deprived OPV of that interest without adequate process.

The Fourteenth Amendment's due-process clause requires that, to deprive a person of property, the government must provide an opportunity for a hearing. *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 313 (1950). But when a plaintiff chooses not to follow an adequate procedure to remedy a deprivation of property, the government does not deny the plaintiff due process. *See Parratt v. Taylor*, 451 U.S. 527, 543-44 (1981).

Here, OPV says Lansing violated its procedural rights by "refusing to hear OPV's appeal." But emails that OPV itself attached to the complaint, and others that Lansing attached to the motion to dismiss, show that Lansing officials repeatedly offered to hear OPV's appeals on various dates—if OPV paid the required fees. OPV admits that it did not pay the fees, but says the fees were not due because Lansing had not yet set a meeting date. R.23, Am. Compl. ¶¶ 44, 76. But that argument is refuted by the emails themselves. *See Cates v. Crystal Clear Techs., LLC*, 874

F.3d 530, 536 (6th Cir. 2017). (Nor in this appeal has OPV challenged the required fees as unreasonable.) OPV therefore has not stated a procedural due-process claim.

The same is true as to OPV's substantive due-process claim, which as relevant here required OPV to allege that Lansing's actions were "arbitrary and capricious." *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1221 (6th Cir. 1992). "Only the most egregious official conduct"— conduct that "shocks the conscience"—can be said to be "arbitrary" in this sense. *McIntosh v. City of Madisonville*, 126 F.4th 1141, 1149 (6th Cir. 2025). OPV has not remotely pled particular facts to support any such conclusion, so OPV has not stated a substantive due-process claim either.

OPV's remaining federal claim is that Lansing took OPV's property—namely its right to lease the apartments at Autumn Ridge—without just compensation. But Lansing afforded OPV a procedure to recover that stick in its bundle of property rights—again by challenging the denial of certificates of compliance through the Building Board of Appeals. And OPV "forfeited" its takings claim when it chose not to follow that procedure. *See Howard v. Macomb Cnty.*, 133 F.4th 566, 572 (6th Cir. 2025).

Finally, we need not reach the question whether Montry and Van Fossen are entitled to qualified immunity, because OPV has not properly alleged any constitutional violation. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009). And the district court had discretion not to exercise supplemental jurisdiction over OPV's state-law claim (for breach of the settlement agreement) after dismissing the federal claims over which it had original jurisdiction. *See Campanella v. Com. Exch. Bank*, 137 F.3d 885, 892 (6th Cir. 1998); 28 U.S.C. § 1367(c)(3).

\*     \*     \*

The district court's judgment is affirmed.